IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| LIVE WELL FINANCIAL, INC., a Delaware Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No.: 3:15CV560 |
| HOME POINT FINANCIAL CORPORATION f/k/a MAVERICK FUNDING CORP., a New Jersey Corporation, | ) ) ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff, Live Well Financial, Inc. ("Live Well"), by counsel, for its complaint against defendant, Home Point Financial Corporation, formerly known as Maverick Funding Corp. ("Home Point"), states as follows:

### NATURE OF THE CASE

1. This action arises out of Home Point's failure to fulfill its obligations under the parties' HECM Loan Purchase and Sale Agreement (the "Agreement"), through which Home Point warranted that certain loans being sold to Live Well held a first-lien position on collateralized real property. Absent such first-lien position, Home Point is required to cure and/or repurchase any non-conforming loan from Live Well. Upon discovery of a non-conforming loan, Live Well made demand for Home Point to repurchase the loan. Home Point has failed and refuses to do so. Accordingly, Live Well seeks a degree of specific performance requiring Home Point to repurchase the non-conforming loan or, in the alternative, damages arising from Home Point's breach of the Agreement.

## PARTIES, JURISDICTION AND VENUE

2. Live Well is a corporation formed and existing under the laws of the State of Delaware with its primary place of business located in Chesterfield, Virginia.

3. Home Point is a corporation formed and existing under the laws of the State of New Jersey with its primary place of business located in Ann Arbor, Michigan.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship as the parties are citizens of different states.

5. Without limitation, this Court may exercise personal jurisdiction over Home Point pursuant to Va. Code § 8.01-328.1(1), as Home Point transacts business within the Commonwealth of Virginia.

6. Venue is proper in the Richmond Division of the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b)(1) and Rule 3 of the Local Rules of this Court because Home Point maintains a registered agent within the Richmond Division and a substantial portion of events giving rise to this action occurred within this Division.

## BACKGROUND FACTS

7. Live Well engages in the servicing of reverse mortgages originated by other companies. Such loan servicing includes, among other things, the collection of reverse mortgage fees from mortgagors.

8. Home Point is a loan originator that originates reverse mortgages.

A. **The Agreement**

9. On March 13, 2013, Live Well, as the purchaser, and Home Point, as the seller, entered into the Agreement for the sale and purchase of certain specified home equity conversion

mortgages (the "Reverse Mortgages"). A copy of the Agreement is attached hereto as **Exhibit A**.

10. Pursuant to the Agreement, the Reverse Mortgages are subject to certain warranties by Home Point, including the obligation that the mortgages hold first-lien positions against the real estate securing the loans.

11. Specifically, Section 3.1 of the Agreement states:

> Each Mortgage Loan must be fully secured by a first Mortgage on a 1-4 unit residential dwelling as specified by Applicable Requirements and/or in the Guidelines.

12. Pursuant to Section 7.1 of the Agreement, Home Point agreed to indemnify, defend and hold Live Well harmless for, *inter alia*, "any breach of a representation or warranty of [Home Point] contained in this Agreement . . ."

13. Section 6.1 of the Agreement, addressing the repurchase of mortgage loans, states as follows:

> In lieu of indemnifying [Live Well] with respect to any of the events or circumstances set forth in Section 7 (the "Indemnified Events"), [Home Point] shall repurchase the related Mortgage Loan provided that . . . such breach materially and adversely affects the value of the affected Mortgage Loan or the interests of [Live Well] therein. [Live Well] may require [Home Point], within thirty (30) days after receipt of written demand from [Live Well], to repurchase any Mortgage Loan for which the Indemnified Events materially and adversely affect the value of the affected Mortgage Loan or interest of [Live Well] therein . . . [Live Well] shall provide [Home Point] an opportunity to cure, to the reasonable satisfaction of [Live Well], any and all deficiencies related to the Mortgage Loan that is affected by the Indemnified Events giving rise to [Home Point's] repurchase obligation under this Section 6. Such opportunity to cure shall exist for a period of thirty (30) days after receipt of written demand for repurchase from [Live Well] and may be extended in the reasonable discretion of [Live Well] if [Home Point] is diligently pursuing such cure.

### B. The Reyhan Loan

14.     As part of the Agreement, Home Point sold to Live Well a loan as identified as Loan No. 6023782 (the "Reyhan Loan").

15.     Contrary to Home Point's representations and warranties, the Reyhan Loan did not, and does not, hold a first-lien position on the real estate it collateralizes and, instead, held and continues to hold a second-lien position.

16.     On February 25, 2015, Live Well made written demand on Home Point to cure its breach of representation and warranty pursuant to the Agreement (the "Reyhan Demand"). A copy of Reyhan Demand is attached hereto as **Exhibit B**.

17.     On or about July 6, 2015, Home Point requested an extension to cure or repurchase the Reyhan Loan to July 27, 2015, as confirmed in writing by letter dated July 7, 2015 (the "Reyhan Extension"). A copy of the Reyhan Extension is attached hereto as **Exhibit C**.

18.     Home Point failed to cure or repurchase on or before July 27, 2015 – or anytime thereafter.

19.     By letter dated August 21, 2015, and based upon Home Point's breaches, Live Well demanded Home Point to repurchase the Reyhan Loan on or before August 28, 2015 (the "Final Demand"). A copy of the Final Demand is attached hereto as **Exhibit D**.

20.     Home Point failed and refused to repurchase the Reyhan Loan.

21.     As of the filing of this Complaint, the repurchase amount of the Reyhan Loan is One Hundred Fifty Three Thousand Three Hundred Forty-Five Dollars ($153,345.00).

22.     Live Well has satisfied all conditions precedent under the Agreement.

## COUNT I
### SPECIFIC PERFORMANCE

23. Live Well hereby incorporates by reference each paragraph alleged above as if fully set forth herein.

24. The Agreement is a valid and binding contract.

25. Through the Agreement, Home Point represented and warranted that all Reverse Mortgages, including the Reyhan Loan, held a first-lien position against the real estate which secured each respective loan.

26. Contrary to and in breach of this representation and warranty, the Reyhan Loan did not – and does not –hold a first-lien position against the real estate which secures the loan.

27. On February 25, 2015, Live Well demanded that Home Point cure this non-conformity or repurchase the Reyhan Loan within thirty (30) days pursuant to the Agreement.

28. Home Point failed to cure or repurchase within thirty (30) days.

29. Live Well agreed to extend Home Point's cure/repurchase period to July 27, 2015.

30. Home Point failed to cure or repurchase on or before July 27, 2015.

31. On August 21, 2015, Live Well issued the Final Demand for Home Point to repurchase the Reyhan Loan on or before August 28, 2015.

32. Home Point failed to, and to date still has failed to, repurchase the Reyhan Loan.

33. Live Well is entitled to all legal or equitable remedies, including specific performance of the Agreement.

34. As a result of Home Point's failure and refusal to comply with the terms of the Agreement, Live Well is entitled to specific performance of Section 6.1 of the Agreement.

35. Live Well has no plain, adequate, certain, prompt and/or legal remedy that would be as efficient to attain the ends of justice and its prompt administration as would a decree of specific performance.

WHEREFORE, Live Well, by counsel, respectfully requests that the Court enter an Order: (i) awarding Live Well a Decree for Specific Performance compelling Home Point to perform, in a prompt and timely manner, all of its obligations as set forth in Section 6.1 of the Agreement including, but not limited to, repurchase of the Reyhan Loan; (ii) make all such decrees and orders and issuing all relief that may be necessary, including enforcement of Section 6.1 of the Agreement to afford Live Well complete relief herein; (iii) awarding Live Well all attorneys' fees incurred in the enforcement of the Agreement pursuant to Section 7.1 of the Agreement; and (iv) granting Live Well such other and further relief as the Court deems just and appropriate under the circumstances.

## COUNT II
### BREACH OF CONTRACT
### (IN THE ALTERNATIVE)

36. Live Well hereby incorporates by reference each paragraph alleged above as if fully set forth herein.

37. The parties entered into the Agreement through which Home Point represented and warranted that the Reverse Mortgages, including the Reyhan Loan, held a first-lien position on the real estate which collateralized each respective loan.

38. Home Point breached its representation and warranty under the Agreement because the Reyhan Loan does not hold a first-lien position on the collateralized real estate and, instead, holds a second-lien position.

39. Live Well demanded that Home Point cure its breach within thirty days pursuant to the Agreement, but Home Point failed to cure.

40. Based on Home Point's request, Live Well voluntarily extended Home Point's deadline to cure to July 27, 2015.

41. Having failed to cure on or before July 27, 2015, Live Well exercised its option that Home Point repurchase the Reyhan Loan, but Home Point has failed and refused to do so.

42. Home Point has breached the Agreement by failing to cure and otherwise refusing to repurchase the Reyhan Loan.

43. As a direct and proximate result of Home Point's breach of the Agreement, Live Well has been damaged in an amount not less than One Hundred Fifty Three Thousand Three Hundred Forty-Five Dollars ($153,345.00).

WHEREFORE, Live Well requests an Order granting: (i) judgment against Home Point in an amount not less than One Hundred Fifty Three Thousand Three Hundred Forty-Five Dollars ($153,345.00); (ii) pre-judgment interest at the judgment rate from a date to be determined by the Court until the date of judgment; (iii) post-judgment interest at the judgment rate from the date of judgment until the judgment is paid in full; (iv) an award to Live Well of its attorneys' fees incurred herein pursuant to Section 7.1 of the Agreement; (v) an award to Live Well of its costs incurred herein; and (vi) such other and further relief as this Court deems just and appropriate.

[continued on next page]

Respectfully submitted,

LIVE WELL FINANCIAL, INC.

By: _____
Counsel

Andrew P. Sherrod
VSB No. 45854
Franklin R. Cragle, III
VSB No. 78398
HIRSCHLER FLEISCHER
A PROFESSIONAL CORPORATION
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone: 804.771.9500
Facsimile: 804.644.0957
E-mail: asherrod@hf-law.com
fcragle@hf-law.com

*Counsel for Live Well Financial, Inc.*